## HAAS *v.* NANERT.

*(Superior Court of Buffalo, General Term.* December 3, 1888.)

1. MORTGAGES—WHAT CONSTITUTES—ABSOLUTE DEEDS—EVIDENCE.

The rule that the evidence to establish that a deed absolute on its face is a mortgage "must be clear, unequivocal, and convincing,"establishes no certain standard of evidence, the question being merely whether the evidence of the extrinsic facts shown is sufficient to rebut the presumption that the deed is what it purports on its face to be.[1]

2. SAME—EVIDENCE—SUFFICIENCY.

Plaintiff testified that the deed was for security to defendant, who had sold his interest in a printing-house to his partners, plaintiff and another, taking their notes and a chattel mortgage in payment. The other partner corroborated this, and said that defendant admitted to him that the land was plaintiff's. One witness said defendant told him that if the land sold for more than plaintiff owed him, he was to divide the surplus; and a bookkeeper of the parties said that defendant sent him to demand of plaintiff taxes which he had paid, and that defendant pointed out to him plaintiff's lot on a map. Defendant denied that the deed was for security, and gave in evidence a written agreement by which, if the land sold to him by plaintiff on a date left blank sold for more than the purchase price and taxes, he was to divide the surplus, and if for less, plaintiff was to share the loss. In his sworn answer he stated that the deed was given in part payment of a debt, but on the trial testified that he gave his note in payment, and that this note was surrendered as an inducement for him to re-enter the firm. *Held,* that the evidence was sufficient to show that the deed was a mortgage.

3. SAME—EFFECT OF MUTUAL RELEASE.

A mutual release of all demands executed by the parties will not prevent a recovery of the land by plaintiff if the deed is shown to be a mortgage, since the release would discharge the debt, but could not vest the title to the mortgaged premises in the mortgagee.

---

[1] To convert a deed absolute on its face into a mortgage, the evidence should be clear, convincing, and specific; of a character such as will leave in the mind of the chancellor no hesitation or doubt. Satterfield v. Malone, 35 Fed. Rep. 445, and note; Rogers v. Beach, (Ind.) 17 N. E. Rep. 609, and note; Wright v. Mahaffey, (Iowa,) 40 N. W. Rep. 112, and note; Strong v. Strong, (Ill.) 18 N. E. Rep. 665.

4. Same—Appeal—Review—Sufficiency of Evidence.

Where it appears that the evidence might fairly warrant a finding that the presumption arising on the face of the deed, as well as the adverse testimony, was overcome, a judgment declaring the deed a mortgage will not be disturbed on appeal.

Appeal from trial term; Titus, Judge.

On motion for rehearing.

*Charles E. Forsyth,* for appellant.     *George Wadsworth,* for respondent.

Beckwith, C. J.    This is a motion on the part of the appellant for a reargument.   At the last general term, on an appeal brought by the defendant, this court affirmed a judgment entered on a decision of Titus, J., by which it was determined that an instrument executed by the plaintiff, Haas, to the defendant, Nanert, though in form a deed, was in reality a mortgage for the security of a debt.

On this motion the appellant contends that in equity the rule which admits parol evidence to show that an instrument which on its face is a deed is in fact a mortgage, is a rule which at the same time requires that the proofs admitted for that purpose must reach a determined and well-recognized standard of certainty and conclusiveness, which element of the rule, he submits, this court, in reviewing and affirming the judgment, overlooked; and he insists that the proofs on the trial in support of the plaintiff's claim that the deed was in reality a mortgage did not come up to the standard, and that consequently the affirmance of the judgment was error.   In support of this position the appellant refers to numerous cases in this and other states, as well as in England, in which the courts in actions of this kind and in suits for the reformation of written contracts have emphasized words to the effect that the evidence "must be clear, unequivocal, and convincing."   But this admonition of the courts does not give any specific or definite measure to go by in pronouncing upon a case of this kind.   This habitual phraseology of the courts as to the cogency of the evidence necessary to establish that a deed in form and legal effect may be a mortgage in equity, originated in that period of struggle and resistance (*Carr* v. *Carr,* 52 N Y. 260) in the equity courts in which the doctrine was finally sustained that parol evidence is admissible to show that an instrument that is a deed in form was intended and delivered as a mortgage.   The "weighty caution," as Lord Eldon called it, contained in the declarations of judges, that the proofs must be ",clear, unequivocal, and convincing," "irrefragable," and the like, is peculiarly appropriate when it is sought to reform an instrument by means of parol testimony, so as to make it conform to the alleged intention of the parties by adding new terms to the contract, or substituting phraseology contrary to the fundamental rule of law that parol testimony for such purpose is not admissible, for a suit in equity for reformation, is likely to involve an inquiry as to the express terms used by the parties at the time of entering into the contract, although even then the evidence is directed towards the collateral fact of accident or mistake. *Townshend* v. *Stangroom,* 6 Ves. 328.   But in actions to establish the claim that a deed was intended to operate merely as a security, it often happens that the whole evidence is received to prove the existence of collateral facts and circumstances, independent of the writing itself, from which an implication results as to the intention of the parties and the object of the delivery of the instrument.   Where such is the object of the evidence, even the rule at law as to the inadmissibility of parol evidence is not violated.   1 Greenl. Ev. § 296a.   Parol evidence being appropriate to establish such facts,—and not admitted to vary the words of the contract, but simply to prove the extrinsic circumstances, it would seem to follow that in such cases the court could not be called upon to measure the weight and force of the evidence by any rule requiring the proofs to approach absolute certainty; but the sufficiency of the evidence would be estimated as in other cases where parol testimony is ad-

mitted to prove the existence or non-existence of an alleged fact. In some cases the party affirming the existence of the fact would have to overcome a presumption against it, arising from the contents of a written paper, as a receipt, or the acknowledgment of consideration, or the form of the paper, as a deed. The principle of testing the weight of the evidence in such cases is not peculiar; but the question would be whether upon the whole body of the evidence, the presumption having its due force, the fact is established. In most trials presumptions arise at every step, which have their effect, unless overcome. An instrument of conveyance which is a deed in form is, *prima facie*, what it purports on its face to be; but that presumption might in some cases be very easily overcome. If, for instance, the proof should be undisputed that there was a loan of money by the vendee at the time of the delivery of the deed, and no other consideration, the conclusion in equity would at once follow that the instrument was intended to be a mortgage. That the evidence should be "clear, unequivocal, and convincing," is a precept peculiarly binding on the trial judge; but if the parol evidence seems to him to establish the facts from which a legal implication arises that the instrument is a mortgage, he will hardly fail to make his finding as in ordinary cases. But if the defendant disputes the existence of the extrinsic facts, his denial will be supported by the presumption arising on the face of the deed. Still at least it will be a question with the judge as to the convincing effect of the evidence as a whole upon his own mind. As in other cases, the appellate court may look into the testimony to see if his conclusion is supported by the evidence, or is a fair deduction from it. In equity the judgment is a deduction as to what is just and true from the facts and circumstances proved in each particular suit; and in a case of this kind, if the conclusion is fairly reached as to the extrinsic fact that the deed was intended as a security, equity declares it a mortgage. I am not able to extract from the judicial saying that the evidence "must be clear, unequivocal, and convincing," nor from the cases in which the like words have been used, any certain standard by which to measure the proofs in a case of this kind. The words seem rather an amulet for the trial judge. Cases of this kind depend largely upon the existence or non-existence of extrinsic facts and circumstances resting in parol testimony; and the establishment of those facts and circumstances to the satisfaction of the trial judge, will depend largely on the character of the witnesses, the consistency of their testimony, and even the manner and appearance of witnesses on the stand. Consequently, on appeal, in looking into the evidence to see if the facts found are properly sustained by the evidence, as in ordinary cases, some consideration will have to be given to the better position of the trial judge for estimating the value of the testimony.

It appears from the evidence in this case that at about the date of the deed in question, the defendant sold his interest in the printing establishment of Haas, Nanert & Klein to his partners, Haas, the plaintiff, and Klein, for the sum of $24,000; that he took in payment the promissory notes of Haas and Klein for $24,000, and as security a chattel mortgage on the property sold. The plaintiff testified that the defendant expressed himself as dissatisfied with the security furnished by the chattel mortgage, and that consequently he executed the deed in question, as further security. The plaintiff in this statement is corroborated by the testimony of Mr. Klein, who testified to hearing some part of the original conversation between the plaintiff and defendant, and that subsequently, when the plaintiff sent to demand a reconveyance of the land, the defendant, in a conversation with the witness, in effect admitted the land belonged to the plaintiff, but that, owing to its location with respect to other lands owned by the parties, he preferred to keep it together until all could be sold. Mr. Loveridge, another witness, testified that at the time the action was commenced the defendant told him that the agreement was that, if the land sold for more than enough to pay what the plaintiff owed him, they were

to divide the surplus. Another witness, Hofheins, testified that he was a book-keeper for the parties; that on two or three occasions the defendant sent him to the plaintiff to demand the amount of some taxes the defendant had paid on the land; that on another occasion the defendant told him that he and the plaintiff were interested together in the land; that the defendant showed him a map of the lands owned by him and the plaintiff, and pointed out the location of the plaintiff's lot, the land in question, and said the lands ought to be sold together; and on another occasion he heard the defendant tell the plaintiff that he did not want his land. Without attempting to mention every item of testimony and fact laid hold of by the plaintiff to sustain his claim, the above is the substance of the direct testimony offered on his part. On the part of the defendant, the defendant himself denied that the conveyance was in the way of security. He testified that it was an absolute sale. He also proved an instrument in writing, dated September 30, 1876, between himself and the plaintiff, by which it was agreed as to all the real estate sold by Haas to Nanert under a date, (which the instrument leaves blank,) that if it did not sell for the amount of the purchase price, interest, taxes, and improvements, then the plaintiff was to bear half the loss, but if defendant should sell the land he would divide with the plaintiff the profits above the amount of the purchase price, interest, taxes, and improvements. The defendant is not corroborated directly by any witness, but he relies upon the presumption raised by the deed in his favor, the agreement of September 30th, and his own testimony. If the conflicting evidence had stopped here, the trial judge might probably have found that the presumption arising from the fact that the writing on its face was an absolute deed, was not satisfactorily overcome. But unfortunately for the defendant, on the trial he testified to a defense so remarkably discordant with his sworn answer that it might very naturally have seriously weakened his testimony in the estimation of the trial court. The testimony shows that at the end of one year after selling out his share in the printing establishment the defendant returned to the firm, taking back his former interest, and that in consideration of such reacquisition he surrendered to Haas and Klein the promissory notes for $24,000, which he took from them on the sale the preceding year. In his answer the defendant set up with specific statement of facts the affirmative defense that at the time of the delivery to him of the deed "the plaintiff was indebted to the defendant in a large amount, and that as part payment of that indebtedness the plaintiff executed and delivered to this defendant, said deed of the lands described in the complaint for the agreed price of $1,000; it being understood and agreed by and between the parties hereto that said deed to the defendant should be absolute payment of said indebtedness to the extent of one thousand dollars, and should operate to the extinguishment of said indebtedness to that extent." This answer, detailed, definite, and particular in statement, was duly verified by the defendant. On the trial no proof was given that the deed was delivered in payment of any indebtedness, or that any debt was extinguished in that amount. But the defendant swore that for the deed and in payment for the land he gave his promissory note to the plaintiff for $1,000, payable after $4,000 of the purchase money of the printing establishment should be paid. And he further testified that at the end of a year, when he went back into the firm, the note was surrendered to him as inducement to him for coming back into the firm, and that, upon such surrender, he destroyed the note. There was no proof that anything was charged to Klein on account of this inducement of $1,000, furnished by the plaintiff, or that the fact of such payment by Haas was made known to Klein.

With respect to the agreement of September 30th, the trial judge may have found it referred to other property, or that it was not inconsistent with the plaintiff's conveyance, being in fact a mortgage. The very remarkable difference in the testimony of the defendant as to the consideration of the deed from

his affirmative and detailed statement in his verified answer, may have induced the trial judge to think that from want of recollection or otherwise very little reliance could be placed upon the defendant's testimony. At all events, I think the general term could hardly say that it was error, if such had been his conclusion.

On the 2d day of May, 1881, the parties executed a mutual release of all demands. Prior to that time, on several different occasions during the preceding three years, the plaintiff testifies that he had demanded the land back from the defendant, and that the defendant had from time to time put him off, not denying his title; but that finally the defendant told him that he meant to keep the land himself, and refused to convey it back. Counsel for the defendant claims that by this instrument of release the plaintiff has given up any cause of action for redemption that he might have had against the defendant. With respect to that claim it may be noticed that, if the deed was an absolute conveyance, vesting ownership in the defendant, there was nothing with respect to the land for the release to operate upon. If, on the other hand, the deed was in fact a mortgage, then the release operated as an acquittance to the plaintiff of his debt. It could not have the effect, if the deed was a security, of vesting absolute title in the defendant. By established policy of the law the mortgagor is not suffered in such manner to divest himself of the right of redemption. *Odell* v. *Montross,* 68 N. Y. 499.

While it is the customary precept of the equity courts, which courts of review, as well as the trial judge, should observe, that in order to declare an instrument of conveyance which on its face is a deed to be a mortgage, the evidence must be "clear, unequivocal, and convincing," yet those words do not furnish an appellate court, sitting in review of the trial judge who has found that a deed was given as a mortgage, any exact standard for determining whether the evidence was sufficiently conclusive. That a deed in form is a mortgage in fact, is usually established by the aid of implication from collateral facts and circumstances, which may be properly proved by parol testimony, the weight of which must be estimated very much as in all other cases where such evidence is receivable. If it appear that the evidence might fairly warrant the trial court in finding that the presumption arising on the face of the deed, as well as the adverse testimony, was overcome, the judgment is properly affirmed. In the case now before us the evidence taken on the trial fairly admitted of the construction which the decision shows the trial court put upon it, and in that view this court at the last general term affirmed the judgment. There is no fixed or definite standard peculiar to cases of this kind, by which the court can determine the sufficiency of the evidence, and consequently, on the decision of the appeal, the court committed no error by disregard of any such supposed criterion. The motion for a reargument is denied.

HATCH, J., concurs. TITUS, J., did not sit in this case.